UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
Jose A. Done, Armando Tirado, Horatio
Wagstaffe, and Francisco Felix,

                  Plaintiffs,        03-CV-1614
                                    (CPS)(CLP)

      - against -

                                    MEMORANDUM
The Brooklyn Hospital Center,        AND ORDER
International Brotherhood of Electrical
Workers, Local Union No. 3, Propoco,
Inc., Thomas Grosso, Kenneth Ducalo,
Harvey Frumkin, Jack Delaporte, Kelvin
Dirk, John Cruz, and The City of New York,

                  Defendants.
----------------------------------------X
Gustavo Done and Derrick Grant,

                  Plaintiffs,        03-CV-1615
                                    (CPS)(CLP)

      - against -

The Brooklyn Hospital Center,
International Brotherhood of Electrical
Workers, Local Union No. 3, Propoco,
Inc., Thomas Grosso, Kenneth Ducalo,
Harvey Frumkin, Jack Delaporte, Kelvin
Dirk, John Cruz, and The City of New York,

                  Defendants.
----------------------------------------X
SIFTON, Senior Judge.

      Plaintiffs Derrick Grant ("Grant"), Gustavo Done ("Gustavo

Done"), Jose A. Done ("Jose Done"), Armando Tirado ("Tirado"),

Horatio Wagstaffe ("Wagstaffe"), and Francisco Felix ("Felix")

commenced two separate actions, later consolidated, against The

Brooklyn Hospital Center ("Hospital"), the International

Brotherhood of Electrical Workers, Local Union No. 3 (the

"Union"), Propoco, Inc., Tom Grosso, Kenneth Ducalo, Kevin Dirk,

Harvey Frumkin, Jack Delaporte, John Cruz, and the City of New York. Plaintiffs have settled with or withdrawn their complaints against all defendants other than defendant Union ("defendant"). Plaintiffs brought the following claims against defendant: breach of the duty of fair representation, in violation of Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a)[1]; racial discrimination in violation of 42 U.S.C. § 1981; discrimination on the basis of race, color, and national origin in violation of Title VII of the Civil Rights Act of 1964, as amended, 41 U.S.C. § 2000e *et seq.* ("Title VII"); violation of the New York State Human Rights Law, N.Y. Exec. L. § 296 *et seq.*; violation of the NYSHLS, N.Y. Exec. L. § 8-107; conspiracy to deprive plaintiffs of their rights in violation of 42 U.S.C. § 1985(3); and failure to prevent the deprivation of plaintiffs rights, in violation of 42 U.S.C. § 1986. Plaintiffs seek punitive and compensatory damages. Now before the Court is defendant's motion for partial summary judgment on two of plaintiffs' claims. For the reasons stated below, the motion is granted in part and denied in part.

## BACKGROUND

The following facts are taken from the parties' submissions

---

[1]The section reads: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

in connection with this motion. Disputes are noted.

*The Parties*

Plaintiffs Tirado and Wagstaffe are Stationary Engineers, and plaintiffs Done and Felix are Firemen, who were simultaneously employed by Hospital in the Engineering Department ("Department") and by the City of New York, Department of Citywide Administrative Services. Done, Tirado, and Felix are Hispanic males. Complaint filed by plaintiffs Jose Done, Tirado, Wagstaffe, and Felix at ¶¶ 3, 4, 6 ("Jose Compl."). Wagstaffe is a black male. *Id*. at ¶ 5. Felix began employment with the Hospital in 1984, Jose Done began employment in 1992, Tirado began employment in 1968, and Wagstaffe began employment in 1988. Exs. 22-25.

Plaintiffs Gustavo Done and Grant are Stationary Engineers and Firemen who were employed at the same time by Hospital and by the New York City Transit Authority. Gustavo Done and Grant are both black males. Complaint filed by Gustavo Done and Derrick Grant at ¶¶ 3, 4 ("Gustavo Compl.")

Defendant Union is a labor organization representing employees in an industry affecting commerce. Union is the bargaining representative for defendant Hospital, and entered into a collective bargaining agreement ("CBA") with Hospital concerning the terms and conditions of employment of plaintiffs and other employees of the Hospital. Gustavo Compl. at ¶ 9.

*"Mutuals"*

At least as far back as 1965, engineers employed by the Hospital to operate the boiler and respond to emergencies have worked full time jobs for the City of New York while moonlighting at the hospital. Deposition of Charles Tatum at 19 ("Tatum Dep."). Most employees had such "dual employment." *Id*. at 20. In order to accommodate overlapping shifts between different employers, employees covered each others shifts. For example, a person working the morning shift at the Hospital, which started at 7:30 a.m., would come to work at 6 a.m., to permit the overnight shift person to leave the Hospital and report for duty at the City's offices on Centre street by 7:00 a.m. *Id*. at 19-20. Employees referred to shifts or parts of shifts that were swapped as "mutuals." *Id*. at 24. The specific practice of covering the end of a shift was called "Early Relief." If an employee took over part of another employee's shift, that other employee would do the same for him. *Id*.

Several plaintiffs testified that they performed mutuals while working two jobs at the Hospital and either the New York City Department of Citywide Administrative Services or the New York City Transit Authority. Felix Dep. at 38; Tirado Dep. at 122-23; Jose Done Dep. at 53-54; Wagstaffe Dep. at 80. Only Gustavo Done testified that he did not cause his time card to be punched when he was not present. Gustavo Done Dep. at 378. The

engineer on duty was aware when an employee swapped a shift. Felix Dep. at 38; Wagstaffe Dep. at 80. Sometimes he entered it into the log book, and sometimes he did not. Tirado Dep. at 123. Employees considered it unnecessary to report mutuals to the Hospital. Jose Done Dep. at 60.

Mr. Tatum and various plaintiffs recalled that the following persons other than plaintiffs performed mutuals during the same times that plaintiffs were performing them: Jamie Limson, Vitale Genmenstein, Amin Quanongo, Razul Juma, Neville Beckford, Marvin Vabnais, Leo Fiore, a Mr. Schmidt, Sydney Jackson, Andrew Jackson, Ryan Henry, Leon Tracey, Tom Popsidarie, Mike Aramirez, Joe Chiequetti, for a total of 15 employees. Tatum Dep. at 27-28; Felix Dep. at 113-115; Tirado Dep. at 121-122; Jose Done Dep. at 61, 161-64. Of these employees, at least five were white, one was black, and one was Indian. Felix Dep. at 113-115; Tirado Dep. at 121; Jose Done Dep. at 161-164. Plaintiffs Felix and Wagstaffe both testified that they had learned that after firing the plaintiffs, the Hospital replaced them with five or six white employees. Felix Dep. at 116; Wagstaffe Dep. at 180. As of 2005, employees in the boiler room continued to work both for the Hospital and for the City and continued to perform mutuals for each other in order to cover shifts. Jose Done Dep. at 62.

Mr. Tatum's superiors were aware of the practice, as was the Hospital's Human Resources Department. Tatum Dep. at 23-25.

Thomas Grosso, the Hospital's former Senior Vice President for Human Resources and Labor Relations, stated that when he was employed at the Hospital, mutuals were being performed at the hospital, and he could not recall there being a written policy governing the practice. Grosso Dep. at 19. There was a specific policy permitting early relief. *Id*. at 23. Ms. Christine Carl, who was involved in the investigation of plaintiffs, stated that there was no written policy prohibiting the practice of mutuals, and that it had taken place for a long time. Carl Dep. at 58. In June of 1999, a new management company hired by the Hospital took over management of the Engineering Department, and the practice of performing mutuals continued. Grievance Letter filed by plaintiffs Jose Done, Felix, Tirado, and Wagstaffe on June 11, 2002, Ex. 16 ("Grievance Letter").

Hospital Administrator Grosso testified that authorization was required before performing mutuals, which were sanctioned by policy, whereas simply swapping shifts was not. Grosso Dep. at 20. However, an arbitrator who heard testimony regarding the reinstatement of one of the plaintiffs accused of shift swapping by the City of New York determined that, in fact, no prior authorization was required in practice. July 6, 2005 Arbitration Decision reinstating plaintiff Jose Done at 7 ("Arbitration Decision") (Ex. 18). Practically speaking, the terms "mutuals" and "swapping shifts" describe the same practices. *See* Tirado

Dep. at 121; Grant Dep. at 155.

Mr. Tatum stated that during various meetings held between 1996 and 1999, he told the employees present that they could not punch each others' cards, or else they would be fired. Tatum Dep. at 167, 168. Mr. Tatum could not say whether plaintiffs had attended meetings when this policy was announced, though he was "sure that they were there at one point in time." *Id*. at 169:25-170:2. Plaintiffs dispute that they were warned by anyone, including Mr. Tatum, about punching each other's time cards, and state that at no time were they given notice that the longstanding practice of performing mutuals could no longer continue. Tirado Aff. at ¶ 4. Mr. Tatum testified before the arbitrator in the City of New York case that no advance approval for swapping shifts was needed and no record of the shift swapping was kept. Arbitration Decision at 8. The employees kept track of their own time. *Id*. When Mr. Tatum got the time cards, he would call the employees to check which extra hours were swaps and which were authorized overtime, and he would authorize the time sheets accordingly. *Id*.

*Collective Bargaining Agreement Grievance and Arbitration Procedure*

The CBA between defendant and the Hospital contained a Grievance and Arbitration Procedure section. *See* Maduegbuna Decl.

at Ex. 17. This section states that grievances shall be resolved
pursuant to a three-step procedure. At Step One, an employee
having a grievance and his union representative shall take it to
the department head. *Id.* at 12. If the grievance is not settled
at Step One, the employee may present the grievance in Step Two,
wherein the grievance shall be reduced to writing, signed by his
union representative and presented to the personnel director. *Id.*
at 12-13. Within ten days of step two, a grievance may be
referred for arbitration by the Hospital or Union to an
arbitrator, which is Step Three. *Id.* at 13.

*Plaintiffs' Termination and Grievance Request*

In May of 2002, plaintiffs were individually summoned to the
Human Resources Department and were told that the Hospital was
conducting an investigation into the practices of the Engineering
Department. Grievance Letter at 2. On May 3, 2002, plaintiffs
Jose Done, Tirado, and Felix went to defendant to request that a
union lawyer represent them at the meeting as the people
conducting the investigation were attorneys representing the
hospital.[2] *Id.* This group of plaintiffs met with James Robson,
the representative to the hospital of defendant, on May 8, 2002.

---

[2]Defendant does not dispute that plaintiffs were entitled to Union
representation, despite a possible failure to pay union dues. Statement of
Union attorney Norman Rothfeld, made in deposition of James Robson, at 29 ("I
am conceding, regardless of their membership status, they were owed the same
degree of representation whether or not they were members.")

*Id.*

On May 29, 2002, plaintiffs were discharged by Hospital for
stamping each others' time cards and swapping shifts.[3] Grievance
Letter at 2. Plaintiff Felix testified that after receiving his
termination letter, he called Norman Rothfeld, attorney for the
Union, and that Mr. Rothfeld stated: "you already got terminated
from the City, why don't you go ahead and admit to what's going
on in the hospital." Felix Dep. at 130. Mr. Rothfeld denied
having said this. *Id.* On May 31, 2002, plaintiffs filed a
grievance with the National Labor Relations Board. *See* Ex. 15
(letter from NLRB to Mr. Robson), Ex. 16 (CBA grievance charge).
On June 11, 2002, plaintiffs filed a grievance under the CBA
against the Hospital. *See* Ex. 16.

In June of 2002, Mr. Robson met with plaintiffs Jose Done,
Tirado, Felix and Wagstaffe to discuss their discharges. Robson
Dep. at 64. Plaintiffs stated to Mr. Robson that they were being
singled out for what was a general practice. Robson Dep. at 62.
Plaintiffs gave Mr. Robson a copy of their Grievance Letter,
which stated that they had been singled out for unfair treatment,
and that they were entitled to payment for unused vacation and

---

[3]The termination letter stated that plaintiffs had committed the
following conduct: falsifying business records; accepting wages under false
pretenses; engaging in unethical practices and those which conflicted with the
interests of the Hospital; providing cash and other forms of renumeration to
co-workers in furtherance of improper conduct, thereby causing co-workers to
engage in improper conduct themselves; engaging coworkers to
acquiesce/participate in violations of employment. *See* Exs. 22, 23, 24, 25.

sick days. *Id*. at 55, Grievance Letter. Mr. Robson testified that
he asked plaintiffs if the charges in the May 29, 2008 discharge
letter were true, and that the plaintiffs answered "yes,"
whereupon the plaintiffs confirmed that whoever was at the
worksite, including plaintiffs and other workers, punched time
cards for others who were absent and working at City jobs. Robson
Dep. at 64. Plaintiffs dispute that they stated to Mr. Robson
that they punched each others' cards or admitted guilt to the
Hospital's charges. Tirado Aff. at ¶ 3.

Mr. Robson performed no investigation into plaintiffs' case
before the July 11 arbitration meeting, including finding out who
were the other employees allegedly performing mutuals, because
plaintiffs "had no case," based on their admissions that they
swapped shifts and stamped each other's time cards. Robson Dep.
at 85:3, 66. When asked in his deposition why he did not inquire
as to others participating in the practice, Mr. Robson stated
that he "didn't want to be responsible for anyone else getting in
trouble at the hospital." Robson Dep. at 115:25-116:3. Although
he believed plaintiffs had no case, Mr. Robson requested the
meeting so he could ask the Hospital to reinstate the plaintiffs.
*Id*. at 67.

On July 11, 2002, a grievance meeting was held, at which
plaintiffs Jose Done, Felix, Tirado, Wagstaffe, Gustavo Done, Mr.
Robson, and various representatives of the Hospital were present.

Robson Dep. at 60. At the meeting, Mr. Robson asked Harvey Frumkin, a hospital administrator, why he fired the four plaintiffs who were present. *Id*. at 61. Mr. Frumkin allegedly responded that the Hospital was getting the short end of the stick. *Id*. at 62. Mr. Robson then asked each of the four men what they had to say about it, whereupon each one said that, as a group, they were being singled out, since others were doing mutuals and the Hospital knew about it. *Id*. Mr. Robson then asked Mr. Frumkin to reinstate the discharged plaintiffs. *Id*. Mr. Robson made no additional effort to present the plaintiffs' case. *Id*. Mr. Frumkin denied the grievance in writing. *Id*., Exs. 33, 34. Plaintiffs allege that Mr. Robson did not communicate the denial to them. Tirado Aff. at ¶ 5. Following the denial of the grievance, Mr. Robson did not file a Step Three request for arbitration within ten days, as was permitted under the CBA. Robson Dep. at 77.

Plaintiffs Jose Done, Tirado, and Wagstaffe, who had been fired by the City of New York for the same actions at issue here, were reinstated with back-pay as a result of the efforts of their unions. *See* Ex. 18 (decision reinstating Jose Done to his employment with the City of New York). Plaintiffs Gustavo Done and Grant were reinstated at their employment with the NYCTA with a thirty-day suspension and a final warning, as a result of their union's efforts. Exs. 31, 32 (stipulations of settlement between

plaintiffs and defendant NYCTA).

Defendant has scheduled arbitrations for other employees who were discharged for alleged misconduct. Tirado Aff. at ¶ 7, Robson Tr. at 114:2-4. The record indicates the name of only one employee whose matter was arbitrated, although it does not state the accusation or the result; the names and conduct of other employees whose matters were arbitrated are not stated. *Id.*

In April, 2003, after the commencement of litigation by plaintiffs against defendant, defendant invited plaintiffs to participate in an arbitration against the Hospital. Ex. 19 (letter from Union counsel to plaintiffs' counsel). Plaintiffs declined to participate, stating in a letter that they would not imperil the ongoing litigation against the Union by participating in arbitration with them. Ex. 20. The Hospital requested a permanent stay of arbitration, based on the delay of ten months in requesting the arbitration, in violation of the 10 day time limit stated in the CBA, which was granted. *See* July 11, 2003 Decision and Order Permanently Staying Arbitration (Muriel Hubsher, J.).

*Procedural History*

Plaintiffs Derrick Grant and Gustavo Done filed their complaint on November 8, 2002, in New York Supreme Court (the "Grant Action"). Plaintiffs Jose Done, Armando Tirado, Horatio

Wagstaffe, and Francisco Felix filed their complaint on November 18, 2002, in New York Supreme Court (the "Done Action"). Brooklyn Hospital filed a notice of removal in both actions on April 2, 2003. Gustavo Done and Grant filed an amended complaint on April 9, 2003. On September 30, 2005, defendant Brooklyn Hospital filed for bankruptcy, and all proceedings against it were thereafter stayed. On December 12, 2005, all discovery in the Grant Action was stayed pending resolution of the bankruptcy proceedings. On January 10, 2006, all discovery in the Done Action was stayed pending resolution of the bankruptcy proceedings. On December 4, 2007, pursuant to a stipulation of settlement, all claims by the Grant plaintiffs were dismissed against Brooklyn Hospital. On December 10, 2007, pursuant to a stipulation of settlement, all claims by the Done plaintiffs were dismissed against Brooklyn Hospital. At some point after June 19, 2008, the Done and Grant actions were consolidated. On October 29, 2008, pursuant to a stipulation of discontinuance, all claims against New York City were dismissed. On November 13, 2008, pursuant to a stipulation of discontinuance, all claims against defendants Propoco, Inc., John Delaporte (sued incorrectly as Jack Delaporte), Kelvin Dirks (sued incorrectly as Kevin Dirk) and John Cruz were dismissed. On December 17, 2008, defendant, the only defendant remaining in this consolidated action, moved for summary judgment.

## DISCUSSION

In their motion for summary judgment, defendants argue that plaintiffs' Title VII and Duty of Fair Representation claims lack merit.

## A. Summary Judgment Standard

A court must grant a motion for summary judgment if the movant shows that "there is no genuine issue as to any material fact" and that "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate "[w]hen the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists. *Apex Oil Co. v. DiMauro*, 822 F.2d 246, 252 (2d Cir. 1987). In order to defeat such a motion, the non-moving party must raise a genuine issue of material fact. "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Elec. Inspectors, Inc. v. Vill. of E. Hills*, 320 F.3d 110, 117 (2d Cir. 2003). A fact is material when it "might affect the outcome of the suit under the governing law." *Id*. Although all facts and inferences therefrom are to be construed in the light most favorable to the non-moving party, the non-moving party must raise more than a "metaphysical doubt"

as to the material facts. *See Matsushita*, 475 U.S. at 586; *Harlen Assocs. v. Vill. of Mineola*, 273 F.3d 494, 498 (2d Cir. 2001). The non-moving party may not rely on conclusory allegations or unsubstantiated speculation. *Twin Labs., Inc. v. Weider Health & Fitness*, 900 F.2d 566, 568 (2d Cir. 1990). Rather, the non-moving party must produce more than a scintilla of admissible evidence that supports the pleadings. *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289-90 (1968); *Niagara Mohawk Power Corp. v. Jones Chem. Inc.*, 315 F.3d 171, 175 (2d Cir. 2003). In deciding such a motion the trial court must determine whether "after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

Plaintiffs allege that defendants have failed to make out a prima facie case for summary judgment. Defendants' 56.1 statement and memorandum of law list numerous facts pertaining to the breach of duty of fair representation claim that are unsupported by citations to documents, affidavits, or depositions. Plaintiffs cite *Celotex Corp v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548; 91 L. Ed. 265 (1986), for the proposition that defendant must identify the portions of the "pleadings, depositions, answers to interrogatories, and admissions on file... which it believes demonstrate the absence of material fact." *Id*. at 323 (internal

quotation marks omitted). Defendant is under no obligation to submit any affidavits or other materials. Fed.R.Civ.Pro. 56(b). To the extent that defendant's summary judgment motion depends on facts, I have before me 35 exhibits submitted by plaintiffs, which together provide the facts necessary to adjudicate the summary judgment motion. The *Celotex* Court stressed that a summary judgment motion "may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment... is satisfied." *Id*. I proceed to examine these facts.

**B. Labor Management Relations Act**

Plaintiffs claim that defendant failed adequately to investigate the merits of plaintiffs' allegation that the Hospital had singled them out for disparate treatment and failed to develop several defenses on plaintiffs' behalf. Defendants counter that they did not breach their duty of fair representation, as plaintiffs' claims lacked merit, and therefore they had no duty to investigate or arbitrate it.

Two elements must be proved to establish a breach of the statutory duty of fair representation. First, a union's conduct must have been "arbitrary, discriminatory or in bad faith." *Barr v. United Parcel Service, Inc*., 868 F.2d 36, 43 (2d Cir. 1989), cert. denied 493 U.S. 975; 107 L. Ed. 2d 502; 110 S. Ct. 499 (1989), quoting *Vaca v. Sipes*, 386 U.S. 171, 190; 87 S. Ct. 903;

17 L. Ed. 2d 842 (1967). Second, the union's conduct must in fact
have "seriously undermine[d] the arbitral process." *Hines v.
Anchor Motor Freight, Inc*., 424 U.S. 554, 567; 47 L. Ed. 2d 231;
96 S. Ct. 1048 (1976); *Barr*, 868 F.2d at 43. "[A] union's actions
are arbitrary only if, in light of the factual and legal
landscape at the time of the union's actions, the union's
behavior is so far outside a 'wide range of reasonableness,' as
to be irrational." *White Rose Food*, 237 F.3d 174, 179 (2d Cir.
2001). "A showing of bad faith requires a showing of fraudulent,
deceitful, or dishonest action." *Id*. (internal quotations
omitted). A union has "broad discretion in its decision whether
and how to pursue an employee's grievance against an employer."
*Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S.
558, 567; 110 S. Ct. 1339; 108 L. Ed. 2d 519 (1990). Absent a
showing of arbitrary conduct or bad faith, a court should not
second guess the union's decision not to pursue plaintiff's
grievance to arbitration. *Cook v. Pan American World Airways*,
*supra*, 771 F.2d 635, 645 (2d Cir. 1985).

"When a union ignores or perfunctorily presses a
meritorious claim, it is held to have acted arbitrarily." *Samuels
v. Air Transp. Local 504*, 992 F.2d 12, 16 (2d Cir. 1993). A
union's handling of an employee's grievance must meet certain
minimum standards of competence and fairness. *See NLRB v. Local
282, International Brotherhood of Teamsters*, 740 F.2d 141, 147

(2d Cir. 1984). "Included in the union's duty of fair representation is the fair and prompt consideration and, if dictated by controlling legal standards, processing on behalf of employees of their claims under contract dispute resolution procedures." *Cruz v. Local Union No. 3 of the IBEW*, 34 F.3d 1148, 1153 (2d Cir. 1994) (internal quotation marks omitted). However, "the duty of fair representation is not breached where the union fails to process a meritless grievance, engages in mere negligent conduct, or fails to process a grievance due to error in evaluating the merits of the grievance." *Id*. at 1153-54. "Tactical errors are insufficient to show a breach of the duty of fair representation; even negligence on the union's part does not give rise to a breach.... As long as the union acts in good faith, the courts cannot intercede on behalf of employees who may be prejudiced by rationally founded decisions which operate to their particular disadvantage." 868 F.2d at 43-44, quoting *Cook v. Pan American World Airways, Inc.*, 771 F.2d 635, 645 (2d Cir. 1985).

Plaintiffs argue that defendants' failure to investigate whether plaintiffs were unfairly singled out for termination was arbitrary. Defendants respond that there was no need to investigate, because plaintiffs admitted to Mr. Robson that they punched each other's time cards, whereupon Mr. Robson decided

that it would be fruitless to conduct investigation, because
plaintiffs "had no case." While a union may in its discretion
decline to pursue a meritless case, that was not the situation
here, as Mr. Robson misconstrued the nature of plaintiffs' claim.
In their grievance letter, a copy of which plaintiffs gave to Mr.
Robson, plaintiffs did not contest the claim that they punched
each other's time cards. Instead, they complained that they had
been singled out, on racial or other prohibited grounds, for
participating in a longstanding practice known to and effectively
condoned by Hospital authorities. Mr. Robson explicitly chose not
to pursue the claim of unequal treatment, declining to
investigate whether others were doing mutuals without punishment,
because he "didn't want to be responsible for anyone else getting
in trouble at the hospital." Robson Dep. at 115:25-116:2-3. As a
result of his stance, Mr. Robson conducted no investigation, did
not secure legal representation for plaintiffs, did not meet with
plaintiffs before the July 11, 2002 hearing, and did not do
anything at the hearing apart from asking plaintiffs what they
had to say for themselves and the Hospital for their
reinstatement. Plaintiffs have offered several depositions
showing that many other Hospital employees were swapping shifts
with each other, and there is no indication that these other
employees were fired for their actions. Furthermore, plaintiffs
have stated that they were replaced by white employees who held

two jobs and swapped shifts, and that at least five white employees who were swapping shifts at the Hospital were not fired. An investigation by defendant would have uncovered this information and additional information that could be used to make out an unequal claim against the Hospital. A reasonable fact finder could find that Mr. Robson's deliberately lax performance rose to the level of arbitrariness. "When a union... perfunctorily presses a meritorious claim, it is held to have acted arbitrarily." *Samuels*, 992 F.2d at 16.

Defendant's motion for summary judgment on the duty of fair representation claim is denied.

## C. Title VII

Plaintiffs claim that defendant discriminated against them based on their race and/or national origin when it declined to arbitrate their discharge grievances against Brooklyn Hospital and when defendant made an untimely request to arbitrate their vacation pay, sick pay and retroactive wage increase discharge grievances.[4]

Under Title VII, a labor union may not "discriminate against [] any individual because of his race, color, religion, sex, or national origin." 42 U.S.C. §2000e-2(c)(1). To establish a claim for disparate treatment under Title VII, a plaintiff must

---

[4]Plaintiffs do not discuss the Title VII claim in their opposition to the summary judgment motion.

demonstrate that he was subjected to an adverse employment action and that his membership in a protected class was a motivating factor in the action. *See*, *e.g.*, *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 141; 120 S. Ct. 2097; 147 L. Ed. 2d 105 (2000). To succeed on a Title VII discrimination claim, a plaintiff must first offer "evidence adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act." *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 358 (1977). For a plaintiff to make out a prima facie case of racial discrimination by a union, he must "show at a minimum that the union treated grievances of similarly situated white employees differently." *Frank v. New York State Elec. & Gas*, 871 F. Supp. 167, 173 (W.D.N.Y. 1994); *see also De la Cruz v. N.Y. Human Res. Admin. Dep't of Soc. Servs.*, 82 F.3d 16, 20 (2d Cir. 1996). It is not enough to assert that the union arbitrated a white employee's dispute, without showing that the conduct of which the white employee was accused was comparable to plaintiff's. *See Cheng v. New York Tel. Co.*, 64 F. Supp. 2d 280, 285 (S.D.N.Y. 1999).

If plaintiff establishes an inference of discrimination, that showing creates a presumption of discrimination which shifts the burden to the defendant. In order to rebut the presumption, the defendant must present a legitimate, non-discriminatory reason for the adverse employment action. *Texas Dep't of Cmty.*

*Affairs v. Burdine*, 450 U.S. 248, 255 (1981). The burden then shifts to the plaintiff to prove that the stated reason is pretext, and "that discrimination was the real reason for the employment action." *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)); *Fisher v. Vassar College*, 114 F.3d 1332, 1336 (2d Cir. 1997) (en banc), *cert. denied*, 522 U.S. 1075 (1998)).

Plaintiffs claim that defendant discriminated against them based on their race and/or national origin when it declined to arbitrate their discharge grievances against the Hospital and when defendant made an untimely request to arbitrate their vacation pay, sick pay, and retroactive wage increase grievances. This claim is not sufficient to give rise to an inference of discrimination. Plaintiffs have presented no evidence to show that any other union employee of a different racial or other group sought and received an arbitration on account of a comparable discharge grievance. Plaintiffs provide an affidavit stating that the Union scheduled an arbitration for Sidney Jackson, whose race is unstated. Tirado Aff. at ¶ 7. This assertion, without additional facts showing that Mr. Jackson's claim was comparable, is insufficient to satisfy plaintiffs' burden.

Plaintiffs have similarly failed to show that any employee of a different racial or other group received an arbitration of a

comparable vacation pay, sick pay, or retroactive wage increase grievance, against Hospital or any other employer. Additionally, plaintiffs offer no evidence to show that defendant acted on the basis of discriminatory animus. Plaintiffs have failed to make out a prima facie case for discrimination. "No reasonable [fact finder] could find in favor of [plaintiffs]." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995). The defendant's motion for summary judgment on the Title VII claim is granted.

## CONCLUSION

For the reasons stated above, defendant Union's motion for summary judgment on the duty of fair representation claim is denied. Defendant's motion for summary judgment on the Title VII claim is granted. The Clerk is directed to transmit a copy of the within to the parties and the assigned Magistrate Judge.


SO ORDERED.

Dated:      Brooklyn, New York
            February 12, 2009


                    By: /s/ Charles P. Sifton (electronically signed)
                          United States District Judge